# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-50448

JACKIE LYNN BOSS

Petitioner - Appellant

V.

NATHANIEL QUARTERMAN
Director, Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent - Appellee

Appeal from the United States District Court for the Western District of
Texas, Waco Division

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Texas state prisoner Jackie Lynn Boss, serving a 10-year sentence for intoxication assault, appeals the district court's denial of his petition for a writ of habeas corpus. Boss sought federal review of the Texas Board of Pardons and Parole's June 2005 decision to deny him "mandatory supervision" release.[1] The parole panel's decision listed statutory reasons for the denial but did not offer any evidence from the record to support its findings. Boss argues due process requires more. We granted a certificate of appealability on the question of

---

[1] TEX. GOV'T CODE § 508.001(5). As discussed infra, mandatory supervision is a conditional release provision in Texas that is no longer strictly mandatory but leaves the parole panel a "modicum of discretion" to deny release.

whether Superintendent v. Hill[2] requires the Texas Board of Pardons and Paroles to give reasons for denying mandatory supervision that are supported by "some evidence."  We AFFIRM the denial of the writ by the district court.

## I

In addressing requests for habeas relief, we review a district court's disposition of a pure legal issue de novo.[3]   The Antiterrorism and Effective Death Penalty Act prohibits a federal court from granting an application for a writ of habeas corpus on a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[4]   We ask "if the state court applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases."[5]

## II

In the Texas penal system, mandatory supervision is "the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division."[6]  This early-release provision is termed "mandatory" because prior to September 1, 1996, once a prisoner's actual time served plus his accrued good-time credit equaled his prison sentence, the inmate had a nondiscretionary right to release under Texas law "based solely on simple arithmetic."[7]  But after Texas amended the mandatory-supervision

---

[2] 472 U.S. 445 (1985).

[3] Valdez v. Cockrell, 274 F.3d 941, 946 (5th Cir. 2001).

[4] 28 U.S.C. § 2254(d)(1).

[5] Williams v. Taylor, 529 U.S. 362, 405 (2000).

[6] TEX. GOV'T CODE § 508.001(5).

[7] Teague v. Quarterman, 482 F.3d 769, 775 (5th Cir. 2007).

scheme, the scheme's title became something of a misnomer. No longer is release strictly mandatory upon a prisoner's eligibility. Instead, under the post-September 1, 1996 scheme, although the statute still reads that a parole panel "shall issue the release" of an eligible inmate,[8] the addition of a new section allows the parole panel a "modicum of discretion"[9] to deny release if it determines that "(1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public."[10] We have described this new scheme as "mandatory in large part, but also discretionary in small part."[11]

Under this system, the parole panel denied Boss mandatory supervision based on a review of both Boss' record and additional information that Boss submitted. The panel's one-page decision consisted of a list of five reasons for Boss' denial, all of which were paragraphs cut verbatim from the Parole Board's Directives.[12]

## III

Boss argues that the procedure used by the parole panel to deny him mandatory supervision did not satisfy due process because the panel's report was not supported by "some evidence" from the record. The State does not contest that Boss is entitled to due process, recognizing that this Court recently held that Texas' mandatory-supervision scheme creates an "expectancy of release"; a protected liberty interest that Texas may not deprive an inmate of

---

[8] TEX. GOV'T CODE § 508.147(a).

[9] Teague, 482 F.3d at 774.

[10] TEX. GOV'T CODE § 508.149(b).

[11] Teague, 482 F.3d at 775.

[12] Texas Board of Pardons and Paroles, Board Directive for Rule 145.6 Notification of a Parole Panel Decision.

without the requisite due process.[13]  Rather, the State contends that it provided the process due in these circumstances—an opportunity to be heard and a report informing him of the reasons for denial.

Boss argues that due process required the parole panel to specify particular evidence in the inmate's record when denying mandatory supervision, pointing to Superintendent v. Hill.[14]  There, the Supreme Court considered the process due when a prison disciplinary board revokes an inmate's good-time credit because of the inmate's violation of a prison rule.[15]  The Court held that to revoke good-time credit, a board's decision must be supported by "some evidence in the record."[16]  Boss contends that Hill's "some evidence" requirement applies with equal force to a board's denial of mandatory supervision because both a revocation of good-time credits and a denial of mandatory supervision directly affect the duration of the prison term.  The good-time credits protected in Hill, Boss argues, are an inmate's means to the goal of release; if the means are afforded a protection, so to must be the goal.

Boss' precise reasoning was recently employed by the Ninth Circuit in Sass v. California Board of Prison Terms,[17] in which that court held some evidence is required to deny parole to California prisoners.  The 9th Circuit, relying on Hill, found no difference between the revocation of good-time credits and the denial of parole, reasoning "[t]o hold that less than the some evidence standard is required would violate clearly established federal law because it would mean

---

[13] Teague, 482 F.3d 773-77.

[14] 472 U.S. 445 (1985).

[15] Id. at 453-57.

[16] Id. at 454.

[17] 461 F.3d 1123 (9th Cir. 2006).

that a state could interfere with a liberty interest—that in parole—without support or in an otherwise arbitrary manner."[18]

We are not persuaded that Hill's "some evidence" requirement is clearly established law in the context of a Texas parole board's denial of mandatory supervision. Boss' argument employs a myopic focus on the prisoner's interest in release, essentially suggesting that any state interference with the prisoner's release implicates Hill's "some evidence" protections. Such reasoning ignores that due process "is not a technical conception with a fixed content unrelated to time, place and circumstance," but is "flexible and calls for such procedural protections as the particular situation demands."[19] Based on the particular situation presented, a court must balance various factors to determine the proper protections, factors which are not limited to the "private interest that will be affected by the official action,"[20] as Boss' argument implies, but also include the risk of an erroneous deprivation, the probable value of additional procedural safeguards, and the Government's interest.[21] Indeed, the latter factors weigh particularly heavy in the prison setting, where additional procedural protections must be balanced against "the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation."[22] Boss' argument does not account for the fact that these factors may weigh differently in denying mandatory supervision than in revoking good-time credits.

---

[18] Id. at 1129.

[19] Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (emphasis added).

[20] Id. at 335.

[21] Id.

[22] Superintendent v. Hill, 472 U.S. 445, 454-55 (1985).

The Supreme Court has purposefully afforded disparate protections in these different situations. Prior to its decision regarding the revocation of good-time credits in Hill, the Supreme Court in Greenholtz v. Inmates of Neb. Penal & Correctional Complex[23] considered what process is due when a parole board denies a prisoner conditional release[24]—the precise question at issue in this case. The Court held:

> [W]e find nothing in the due process concepts as they have thus far evolved that requires the Parole Board to specify the particular "evidence" in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release.[25]

The court reasoned that to require a parole board to provide a summary of the evidence would "convert the process into an adversary proceeding," which is appropriate for determining the retrospective questions of fact relevant in the revocation of good-time credits, but unhelpful in making the predictive and discretionary determination involved in conditional release.[26] In other words, while the statutory conditions to revoke good-time credits are "essentially factual," requiring a board to determine if the prisoner has, in fact, broken a

---

[23] 442 U.S. 1 (1979).

[24] The conditional release provision at issue in Greenholt was the Nebraska parole statute. Id. at 4. The Court first held, before defining the requirements of due process, that Nebraska's parole scheme created an "expectancy of release" protected by the Due Process Clause. Id. at 11-12. The 5th Circuit recently held that "Texas's mandatory supervision scheme is virtually identical to [the parole scheme] at issue in Greenholtz," and thus also creates an "expectancy of release." Teague v. Quarterman, 482 F.3d 769, 776 (5th Cir. 2007).

[25] Greenholtz, 442 U.S. at 15.

[26] Id.

prison rule, the conditional release decision is "necessarily subjective in part and predictive in part,"[27] an "experienced prediction based on a host of variables."[28]

Despite these differences, Boss would have us hold that Hill clearly established the due process requirements for deciding whether to release a prisoner under Texas' rules of mandatory supervision. This argument places Hill in tension with Greenholtz, which otherwise is controlling law in this case.

We find no persuasive reason to conclude that Hill supplanted Greenholtz. The Hill opinion made no reference to Greenholtz, a strong implication that parole board decisions on good-time credits and on mandatory supervision make distinct draws upon due process. Moreover, the Supreme Court continues to rely on Greenholtz after Hill. In a case considering the due process required to transfer a prisoner to a supermax facility, the Court stated "[w]here the inquiry draws more on the experience of prison administrators . . . the informal, nonadversary procedures set forth in Greenholtz . . . provide the appropriate model."[29]

Denying mandatory supervision and revoking good-time credits are distinct deprivations for which the Supreme Court has prescribed different constitutional protections. We cannot find that Hill's "some evidence" requirement clearly established the due process requirements for denials of mandatory supervision. Rather, Greenholtz continues to define the procedural protections due before a state denies a prisoner conditional release. AFFIRMED.

---

[27] Id. at 13.

[28] Id. at 16. Because of the subjective and predictive nature of the conditional release decision, requiring a parole panel to provide evidence to support its decision would not serve the purpose of minimizing the risk of error. Id. at 13.

[29] Wilkinson v. Austin, 545 U.S. 209, 228-29 (2005).