WR-31,454-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/25/2015 2:23:44 PM
Accepted 6/29/2015 2:29:20 PM
ABEL ACOSTA
CLERK

No. WR-31,454-03

---

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

EX PARTE RODNEY ELNESTO SMILEY

---

On Application for a Writ of Habeas Corpus

Trial Court Cause No. C-213-010293-1011284-B
213th Judicial District Court
Tarrant County, Texas

---

**APPLICANT'S BRIEF**

---

FILED IN
COURT OF CRIMINAL APPEALS

June 29, 2015

ABEL ACOSTA, CLERK

STATE COUNSEL FOR OFFENDERS

Kenneth Nash, Appellate Chief
State Bar of Texas No. 14811030

Nicholas Mensch
State Bar of Texas No. 24070262
P. O. Box 4005
Huntsville, TX 77342
(936) 437-5252
(936) 437-5279 (fax)
nicholas.mensch@tdcj.texas.gov

Attorney for Applicant

**IDENTITY OF PARTIES AND COUNSEL**

**APPLICANT:**
Rodney Elnesto Smiley

**COUNSEL FOR APPLICANT:**
Kenneth Nash, Appellate Chief
State Bar of Texas No. 14811030
Nicholas Mensch
State Bar of Texas No. 24070262
State Counsel for Offenders
P.O. Box 4005; Huntsville, Texas 77340
(936) 437-5252/(936) 437-5279 fax

**COUNSEL FOR THE STATE OF TEXAS:**
Andrea Jacobs
State Bar of Texas No. 24037596
Assistant Criminal District Attorney, Tarrant County
401 West Belknap
Fort Worth, TX 76196-0201
(817) 884-1687/(817) 884-1672 (fax)

**COUNSEL FOR THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE:**
Joseph P. Corcoran
State Bar of Texas No. 00793549
Assistant Attorney General
Supervising Attorney for Non-Capital Appeals
Criminal Appeals Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400/(512) 936-1280 fax

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ................................................................. ii

INDEX OF AUTHORITIES ............................................................................ iv

STATEMENT OF THE CASE ............................................................................ 1

ISSUES PRESENTED ....................................................................................... 3

    I.     What remedy, if any, is appropriate for the Board of Pardons and Paroles' failure to vote on Applicant's original discretionary mandatory release date in a timely fashion? .............................................. 8

    II.    Is TDCJ's policy (of not "releasing" a prisoner to mandatory supervision on one concurrent sentence until he is "eligible for release" on all concurrent sentences) legal? ............................................. 15

STATEMENT OF FACTS ................................................................................. 3

SUMMARY OF THE ARGUMENT ...................................................................... 6

ARGUMENT ................................................................................................. 8

PRAYER ..................................................................................................... 26

CERTIFICATE OF SERVICE .......................................................................... 27

CERTIFICATE OF COMPLIANCE .................................................................... 28

# INDEX OF AUTHORITIES

**Cases**

*Board of Pardons v. Allen*,
    482 U.S. 369 (1987)...............................................................................9

*Boss v. Quarterman*,
    552 F.3d 425 (5th Cir. 2008) .............................................................20

*Boykin v. State*,
    818 S.W.2d 782 (Tex. Crim. App. 1991) ...........................................21

*Clinton v. State*,
    354 S.W.3d  (Tex. Crim. App. 2011) ......................................... 21, 22

*Dodd v. Meno*,
    870 S.W.2d 4 (Tex. 1994). ..................................................................21

*Ex parte Alegria*,
    464 S.W.2d 868 (Tex. Crim. App. 1971) ...........................................24

*Ex parte Byrd*,
    162 S.W.3d 250 (Tex. Crim. App. 2005) ...........................................17

*Ex parte Cowan*,
    171 S.W.3d 890 (Tex. Crim. App. 2005) .............................................8

*Ex parte Geiken*,
    28 S.W.3d 553 (Tex. Crim. App. 2000) ................................. 9, 10, 15, 20, 25

*Ex parte Hall*
    995 S.W.2d 151 (Tex. Crim. App. 1999) ...........................................17

*Ex parte Keller*
    173 S.W.3d 492 (Tex. Crim. App. 2005) ....................................... 17, 20, 21

*Ex parte Mabry*,
    137 S.W.3d 58 (Tex. Crim. App. 2004) ..................................... 16, 17, 18, 24

*Ex parte Ramos*,
  No. 59,134-01, 2004 Tex. Crim. App. LEXIS 1647 (Tex. Crim. App. September 29, 2004) (not designated for publication) ...................................13

*Ex parte Retzlaff*,
  135 S.W.3d 45 (Tex. Crim. App. 2004) ................................................ 10, 12

*Ex parte Rieck*,
  144 S.W.3d 510 (Tex. Crim. App. 2004) .......................................................21

*Ex parte Roberts*,
  987 S.W.2d 575 (Tex. Crim. App. 1999) .......................................................17

*Ex parte Ruthart*,
  980 S.W.2d 469 (Tex. Crim. App. 1998) .......................................................22

*Ex parte Rutledge*
  741 S.W.2d 460 (Tex. Crim. App. 1987) ................................................ 17, 24

*Ex parte Schroeter*,
  958 S.W.2d 811 (Tex. Crim. App. 1997) .......................................................18

*Ex parte Shook*,
  59 S.W.3d 174 (Tex. Crim. App. 2001) ................................................ 10, 20

*Ex parte Smiley*,
  WR-31,454-02, No. C-213-010241-1011284-A (Tex. Crim. App. August 6, 2014) (not designated for publication) ............................................................2

*Ex parte Smiley*,
  WR-31,454-03, No. C-213-010293-1011284-B (Tex. Crim. App. November 26, 2014) (not designated for publication) ....................................................2

*Ex parte Smiley*,
  WR-31,454-03, No. C-213-010293-1011284-B (Tex. Crim. App. April 29, 2015) (not designated for publication) ..........................................................2

*Ex parte Thompson*,
  173 S.W.3d 458 (Tex. Crim. App. 2005) ........................................ 17, 18, 23

*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*,
    442 U.S. 1 (1979)....................................................................................9, 10

*Hughes v. State*,
    897 S.W.2d 285 (Tex. Crim. App. 1994) .......................................................24

*LaChance v. Erickson*,
    522 U.S. 262 (1998)......................................................................................10

*Molinet v. Kimbrell*,
    356 S.W.3d 407 (Tex. 2011) .........................................................................21

*Moseley v. Behringer*,
    184 S.W.3d 829 (Tex. App.—Fort Worth 2006, no pet.) .............................22

*Teague v. Quarterman*,
    482 F.3d 769 (5th Cir. 2007) ........................................................................20

*Weaver v. Graham*,
    450 U.S. 24 (1981)........................................................................................24

*White v. State*,
    61 S.W.3d 424 (Tex. Crim. App. 2001) ........................................................21

*Wright v. Ector County Indep. Sch. Dist.*,
    867 S.W.2d 863 (Tex. App.—El Paso 1993, no writ).................................22

**Constitutions**

Article I, Section 10 of the United States Constitution ..........................................23

Article I, Section 16 of the Texas Constitution .....................................................23

**Rules**

Texas Rule of Appellate Procedure 73.1 .................................................................2

Texas Rule of Appellate Procedure 77.3 ...............................................................14

**Statutes**

Texas Code of Criminal Procedure 42.18 § 8(c) (1994) ............................... *passim*

Texas Code of Criminal Procedure 42.18 § 8(c)(1-13) (1994) ....................... 16, 20

Texas Government Code § 311.011(a) ....................................................................21

Texas Government Code § 311.011(b) ....................................................................21

Texas Government Code § 311.016(2) ....................................................................22

Texas Government Code § 311.023(6) ....................................................................20

Texas Government Code § 508.147(a) ................................................................8, 15

Texas Government Code § 508.147(b) ......................................................................8

Texas Government Code § 508.149................................................................ *passim*

Texas Government Code § 508.149(a) ................................................................9, 15

Texas Government Code § 508.149(b)...................................................... 9, 15, 17

**Treatises**

*The American Heritage Dictonary* (4th ed.) at 706 ...............................................22

**Miscellaneous**

Session Law, 74th Legislature, Regular Session, Chapter 263 §§ 3 and 4 (1995)..16

Session Law, 75th Legislature, Regular Session, Chapter 165 § 12.22 (1997) ......16

No. WR-31,454-03

---

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

EX PARTE RODNEY ELNESTO SMILEY

---

On Application for a Writ of Habeas Corpus

Trial Court Cause No. C-213-010293-1011284-B
213th Judicial District Court
Tarrant County, Texas

---

**APPLICANT'S BRIEF**

---

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

COMES NOW Rodney Elnesto Smiley, Applicant in cause number WR-31,454-03, and submits this brief in accordance with the Texas Rules of Appellate Procedure and this Court's invitation on April 29, 2015:

## STATEMENT OF THE CASE

Applicant pled guilty to the third degree felony offense of injury to a child with intent to cause bodily injury. See Exhibit C. Applicant did not appeal this conviction. On June 23, 2014 filed an Application for a Writ of Habeas Corpus that

was dismissed for non-compliance with Tex. R. App. P. 73.1 *Ex parte Smiley*, WR-31,454-02, No. C-213-010241-1011284-A (Tex. Crim. App. August 6, 2014) (not designated for publication). On August 25, 2014, Applicant re-filed his application. On September 9, 2014, the State filed their answer. Thereafter, on September 18, 2014, the trial court adopted the State's Memorandum, Findings of Fact and Conclusions of Law as its own and recommended that the Applicant's requested relief be dismissed as moot. On November 26, 2014, this Court remanded the case back to the trial court for resolution of whether Applicant was denied due process by the late vote to deny him release to discretionary mandatory supervision. *Ex parte Smiley*, WR-31,454-03, No. C-213-010293-1011284-B (Tex. Crim. App. November 26, 2014) (not designated for publication). After the Texas Department of Criminal Justice provided the trial court an affidavit in response, the trial court again adopted the State's Memorandum, Findings of Fact and Conclusions of Law as its own and recommended that the Applicant's requested relief should be denied on February 24, 2015. On April 29, 2015, this Court filed and set this case for submission and invited briefing on two issues. *Ex parte Smiley*, WR-31,454-03, No. C-213-010293-1011284-B (Tex. Crim. App. April 29, 2015) (not designated for publication).

Applicant contends, among other things, that the Board of Pardons and Paroles did not timey vote on his discretionary mandatory supervision release for

2

the injury to a child conviction, and when the Board did vote to keep Applicant in prison, they used the denial of release to mandatory supervision to deny his release to mandatory supervision on the theft conviction. TDCJ responds that an offender may not be released to mandatory supervision until eligible to be released on all mandatory eligible offenses.

## ISSUE PRESENTED

**I.  What remedy, if any, is appropriate for the Board of Pardons and Paroles' failure to vote on Applicant's original discretionary mandatory release date in a timely fashion?**

**II. Is TDCJ's policy (of not "releasing" a prisoner to mandatory supervision on one concurrent sentence until he is "eligible for release" on all concurrent sentences) legal?**

## STATEMENT OF FACTS

On November 28, 1994, Applicant was convicted of the offense of Theft of Property, committed on February 8, 1994, and sentenced to 25 years' confinement in the TDCJ-ID. See Exhibit A.[1] On August 30, 2001, Applicant was released from custody on parole supervision. See Exhibit B-4. On October 26, 2006, while on parole supervision, Applicant was convicted of the offense of Injury to a Child, committed on August 1, 2004, and sentenced to 10 years' confinement in TDCJ-ID. See Exhibit C. On November 8, 2006, the Board of Pardons and Paroles ("BPP") revoked Applicant's parole. See Exhibit B-3. Applicant's theft conviction

---

[1]    All references to exhibits herein are to those exhibits attached to the application for a writ of habeas corpus.

is subject to the pre-1996 mandatory supervision statute, while his injury to a child is governed by the current discretionary mandatory supervision statute. On December 7, 2006, the TDCJ determined Applicant's mandatory-supervision release date on his old sentence as April 8, 2014, and his discretionary mandatory-supervision release date on his new sentence as September 21, 2010. See Exhibit D. Subsequently, Applicant was promoted in time-earning status, and his mandatory-supervision release date on his old sentence was advanced to May 13, 2013. See Exhibit E-1. On January 14, 2013, the TDCJ notified Applicant that he would be reviewed for discretionary mandatory-supervision release. See Exhibits F and B-1. This occurred over two years after Applicant became eligible for release on discretionary mandatory supervision on his injury to a child case and about 4 months before his mandatory supervision date on the theft case. On April 10, 2013, a parole panel of BPP issued its decision to deny discretionary mandatory-supervision release (DMS). See Exhibits G and B-1. He was been denied discretionary mandatory supervision release on two subsequent reviews. The TDCJ re-established Applicant's discretionary mandatory-supervision release date on his new sentence as February 8, 2016. See Exhibit E-1.

In response to the question regarding when Applicant was eligible for release to mandatory supervision, Charley Valdez, Program Supervisor III for the Classification and Records Department of the TDCJ averred:

4

Because an offender may not be released to mandatory supervision until eligible to be released on all mandatory eligible offenses, TDCJ calculates the projected mandatory release date on the controlling mandatory eligible offense; in this instance cause number F-9402594-U had a projected mandatory supervision date of 5-12-2013, and his DMS notice was based on this date. On 1-29-2013, Applicant was provided notice that he was being reviewed for DMS on cause number 1011284D, and that he had until 2-28-2013 to provide any information to the Board of Pardons and Parole (BPP) regarding his release. On 4-10-2013, the BPP voted to deny release to DMS with a next review date 04/2014.

On 12-12-2013, Applicant was provided notice that he was being reviewed for DMS, and that he had until 1-11-2014 to provide any information to the BPP regarding his release. On 02-18-2014, the BPP voted to deny release to DMS with a next review date of 02/2015.

On 10-14-2014, Applicant was provided notice that he was being reviewed for DMS, and that he had until 11-15-2014 to provide any information to the BPP regarding his release. On 12-15-2014, the BPP voted to deny release to DMS with a next review date of 12/2015.

Affidavit of Charley Valdez at 3.[2]

As demonstrated by TDCJ's notices (NDMS) and BPP's votes to deny discretionary mandatory-supervision release, see Exhibit B-1, the TDCJ and BPP are treating Applicant's old sentence as eligible for only discretionary mandatory-supervision release and therefore, governed by Tex. Gov't Code § 508.149. Applicant's mandatory-supervision release date (of May 13, 2013) elapsed over two years ago, but he is still incarcerated on that old 25-year sentence. See Exhibit E-1.

---

[2]   Valdez also averred that "Applicant's initial review date was not changed." Affidavit of Charley Valdez at 3.

## SUMMARY OF THE ARGUMENT

**I. What remedy, if any, is appropriate for the Board of Pardons and Paroles' failure to vote on Applicant's original discretionary mandatory release date in a timely fashion?**

Applicant's subsequent notices after over two years of eligibility for discretionary mandatory supervision were constitutionally deficient. The notices were based upon the incorrect policy that TDCJ is applying to persons like Applicant, who is serving both a prior sentence covered by the pre-1996 mandatory supervision statue, and the current statute. That policy is not releasing an inmate to mandatory supervision until he is eligible to be released on all mandatory eligible offenses. By treating Applicant's theft sentence as if it were to be construed under Tex. Gov't Code § 508.149 instead of former Tex. Code of Crim. Proc. 42.18 § 8(c)(1994) deprives Applicant of "the quantum and quality of the process due" in this particular situation and is not serving a "purpose of minimizing the risk of error." This policy also deprived Applicant of review for discretionary mandatory supervision for over two years after he became eligible. Based upon these deficient notices and the illegality of TDCJ's policy, Applicant should be immediately released to mandatory supervision from the sentence imposed in for the felony offense of Theft of Property because of the prejudice stemming from this illegal policy.

6

**II. Is TDCJ's policy (of not "releasing" a prisoner to mandatory supervision on one concurrent sentence until he is "eligible for release" on all concurrent sentences) legal?**

Applicant's 1994 theft conviction is his holding conviction as it is the sentence that will keep him in custody for the longest period of time, essentially swallowing his 2006 conviction for injury to a child. Because Applicant's holding conviction for theft was committed prior to September 1, 1996, the former provisions of Article 42.18 § 8(c) apply, not Tex. Gov't Code § 508.149. Under the law at time of his theft conviction, Applicant had an automatic right to release to mandatory supervision once his actual time served plus accrued good conduct time added up to the maximum term to which the inmate was sentenced. Because Applicant's theft conviction is the controlling mandatory supervision offense and he is not serving his sentence for injury to a child consecutively with this offense, Applicant was entitled to immediate release on mandatory supervision on May 12, 2013.

TDCJ's policy of not releasing an inmate to mandatory supervision until he is eligible to be released on all mandatory eligible offenses is not legal as it violates this Court's prior precedent regarding eligibility for mandatory supervision, former Art. 42.18 § 8(c), federal and state constitutional prohibition against *ex post facto* laws, the state constitutional prohibition against retroactive laws, and the statutory "savings provision."

# ARGUMENT

## I. What remedy, if any, is appropriate for the Board of Pardons and Paroles' failure to vote on Applicant's original discretionary mandatory release date in a timely fashion?

At the time of Applicant's conviction for theft in 1994, Art. 42.18 § 8(c) provided, in pertinent part:

> Except as otherwise provided by this subsection, a prisoner who is not on parole *shall be released* to mandatory supervision by order of a parole panel when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced. A person released to mandatory supervision shall, upon release, be deemed as if released on parole.
>
> Tex. Code of Crim. Proc. 42.18 § 8(c) (1994) (emphasis added)[3]

Currently release to mandatory supervision[4] is governed by Chapter 508 of the Texas Government Code. Specifically, Tex. Gov't Code §508.147(a) provides:

> Except as provided by Section 508.149, a parole panel *shall* order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced
>
> (emphasis added).

---

[3] Applicant contends the prior statute governs his mandatory supervision eligibility. See *Infra* at 15-20.

[4] "An inmate released to mandatory supervision is considered to be released on parole." Tex. Gov't Code §508.147(b), see also *Ex parte Cowan*, 171 S.W.3d 890, 895 (Tex. Crim. App. 2005) (Johnson, j., concurring) (characterizing mandatory supervision as a "fraternal twin" of parole).

Tex. Gov't Code § 508.149(a) lists 21 disqualifications for release on mandatory supervision. Moreover, subdivision (b) forbids release on mandatory supervision if a parole panel determines that:

> the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public.

"The [U.S.] Supreme Court has determined that a liberty interest is created a when the state statute uses such mandatory language." *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000), citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11-12 (1979). The U.S. Supreme Court has also concluded "that a statute's use of mandatory language, specifically the word 'shall,' creates a presumption that release will be granted when certain findings are made." *Id.*, citing to *Board of Pardon v. Allen*, 482 U.S. 369, 377 (1987).[5] It has been noted that "it would appear that Texas Inmates have less of a 'liberty' interest under the current statutory scheme than they did under the prior scheme since the prior scheme provided for 'automatic' release and the

---

[5]  "In analyzing the current mandatory supervision statute, this Court held that "the language of the statute does create a liberty interest in mandatory supervision release." *Ex parte Geiken*, 28 S.W.3d at 558. This differs from the regular parole process as an inmate does not have this liberty interest. *Id.*

current scheme does not." *Ex parte Retzlaff*, 135 S.W.3d 45, 54 (Tex. Crim. App. 2004) (Hervey, J., dissenting).[6]

Since Applicant has a liberty interest, "due process requires notice and a meaningful opportunity to be heard." *Ex parte Geiken*, 28 S.W.3d at 560, citing to *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). "If release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Id.*, citing to *Greenholtz*, 442 U.S. at 16. "[T]o comply with due process in making the mandatory release decision, the Board must provide an inmate with timely notice that he will be considered for mandatory supervision release prior to that review taking place." *Ex parte Geiken*, 28 S.W.3d at 560. See also *Ex parte Shook*, 59 S.W.3d 174, 175 (Tex. Crim. App. 2001).[7] An inmate has a constitutional due-process right to 30 days' advance notice of the specific month and year in which he will be reviewed for release on mandatory supervision so that he has sufficient opportunity to submit materials on his behalf. *Ex parte Retzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that notice to an inmate that he will be reviewed

---

[6]  Release was automatic when the calendar time a person has served plus any accrued good conduct time equal the maximum term to which that person was sentenced. Tex. Code of Crim. Proc. 42.18 § 8(c) (1994).

[7]  "[W]hen the board gives the inmate notice of a specific date on which the hearing is scheduled to take place, the inmate is entitled to rely on that information and accordingly has until that date to submit relevant information on his behalf. If the board holds the hearing for such consideration on a date earlier than the specific date the inmate has been notified the hearing will take place, then the inmate has been misled by the notice and denied the full opportunity he was told he would have in order to submit relevant information to the Board." *Ex parte Shook*, 59 S.W.3d at 176.

for mandatory-supervision release at some unspecified time before his projected release date does not constitute timely notice consistent with due process).

Applicant became eligible for discretionary mandatory supervision release on his injury to a child sentence on September 21, 2010, and for mandatory supervision release on his prior theft sentence on April 8, 2014. See Exhibit D. Subsequently, Applicant was promoted in time-earning status and his mandatory supervision date on his theft sentence was advanced to May 13, 2013. See Exhibit E-1. "Because an offender may not be released to mandatory supervision until eligible to be released on all mandatory eligible offenses, TDCJ calculates the projected mandatory release date on the controlling mandatory eligible offense[.]" *Affidavit of Charley Valdez* at 3. In other words, for over two years, even though Applicant became eligible for release to discretionary mandatory supervision, Applicant did not receive notice of that eligibility by TDCJ or BPP and he was denied any hearing with the opportunity to present evidence on his behalf to obtain discretionary mandatory supervision. See *Id*. ("On 1-29-2013, Applicant was provided notice that he was being reviewed for DMS on cause number 1011284D, and that he had until 2-28-2013 to provide any information to the Board of Pardons and Paroles (BPP) regarding his release."). "On 4-10-2013, the BPP voted to deny release to DMS [on Applicant's injury to a child sentence] with a new review date of 4-1-2014[,] because Applicant's "controlling mandatory eligible offense" was

11

his theft sentence. *Id*. On April 1, 2014, Applicant's "controlling mandatory eligible offense" became his injury to a child sentence because he attained his mandatory supervision release date on May 13, 2013 on his theft sentence. See Exhibit E-1. That subsequent review date of April 1, 2014, lapsed after BPP again voted to deny discretionary mandatory supervision release, See Exhibits B-1 and E-1, even though Applicant had already obtained his mandatory supervision date.

The notices were constitutionally deficient. The failure to provide notice for over two years after Applicant obtained eligibility for discretionary mandatory supervision and the subsequent notices he received were based upon the incorrect policy that TDCJ is applying to persons like Applicant, who is serving both a prior sentence covered by the pre-1996 mandatory supervision statue and the current statute.[8] That policy is not releasing an inmate to mandatory supervision until he is eligible to be released on all mandatory eligible offenses. See *Infra* at 20-25 (outlining how this policy is not legal). By treating Applicant's theft sentence as if it were to be construed under Tex. Gov't Code § 508.149 instead of former Tex. Code of Crim. Proc. 42.18 § 8(c)(1994) deprives Applicant of "the quantum and quality of the process due" and in this particular situation is not serving a "purpose of minimizing the risk of error." *Ex parte Retzlaff*, 135 S.W.3d at 49. By treating

---

[8] Applicant notes that the first notice of review for discretionary mandatory supervision was given to him less than 4 months before he became eligible for release to mandatory supervision for his theft case.

Applicant's prior 1996 sentence as only eligible for discretionary mandatory supervision and basing the subsequent notices on that assumption, TDCJ and BPP have created a faulty premise that deprives Applicant of his mandatory release that he was scheduled to obtain on May 13, 2013. It also denied him any possible review after he was eligible for discretionary mandatory supervision on his injury to a child case for over two years. It is conceivable that, if the TDCJ and the BPP continue to engage in this nefarious conduct, Applicant will not be released on mandatory supervision on his theft sentence (which he was entitled to May 13, 2013) until February 8, 2016, the date his injury to a child offense discharges. See *Affidavit of Charley Valdez* at 3 ("On 12-12-2013, Applicant was provided notice that he was being reviewed for DMS [discretionary mandatory supervision] and that he had until 11-11-2014 to provide any information to the BPP regarding his release. On 2-18-2014, the BPP voted to deny release to DMS with a next review date of 2-1-2015.").

This Court, in an unpublished decision, stated that because a person received timely and specific notice of his most recent review hearing, his claim that he did not receive constitutionally sufficient notice on his three prior reviews was moot. See *Ex parte Ramos*, No. 59,134-01 2004 Tex. Crim. App. LEXIS 1647 (Tex.

Crim. App. September 29, 2004) (not designated for publication).[9] Here, the situation is distinguishable. As stated earlier, the notice that has been given is constitutionally defective because of TDCJ and BPP's faulty premise that Applicant's pre-1996 theft case is governed by Tex. Gov't Code § 508.149, instead of former Tex. Code of Crim. Proc. 42.18 § 8(c)(1994). Based upon this faulty premise, Applicant has never been given accurate notice as to his mandatory supervision dates, and he was denied notice and review of his case for over two years. Subsequent reviews do render this failure to provide notice of his DMS moot as Applicant is still being harmed by this policy to this day as he has still not been released to mandatory supervision on his theft case. This, in effect, rendered the notices useless and deprived Applicant any meaningful opportunity to be heard or reviewed by the BPP for discretionary mandatory supervision as he has now become eligible for mandatory supervision and is entitled to immediate release.

Applicant should be immediately released to mandatory supervision from the sentence imposed in Cause No. F-9402594-PU for the felony offense of Theft of Property because of the prejudice stemming from the illegal policy TDCJ has created. See *Infra at* 20-25.

---

[9] See Tex. R. App. 77.3 ("Unpublished opinions have no precedential value and must not be cited as authority by counsel as authority by counsel or by a court."). Applicant's counsel does not cite this case as authority, but in an abundance of caution, cites this case only to rebut the State's reliance that his claim is moot as the trial court found.

## II. Is TDCJ's policy (of not "releasing" a prisoner to mandatory supervision on one concurrent sentence until he is "eligible for release" on all concurrent sentences) legal?

Currently release to mandatory supervision is governed by Chapter 508 of the Texas Government Code. Specifically, Tex. Gov't Code §508.147(a) provides:

> Except as provided by Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced

Tex. Gov't Code § 508.149(a) lists 21 disqualifications for release on mandatory supervision. Moreover, subdivision (b) forbids release on mandatory supervision if a parole panel determines that:

> (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public.

In summarizing the legislative history of Section 508.149, this Court stated:

> ***In 1996, the Legislature amended the mandatory supervision statute. Under the old statute, an eligible prisoner was automatically released when the actual time served plus accrued good conduct time added up to the maximum term to which the inmate was sentenced. See Art. 42.18, V.A.C.C.P. (1995). Under the amended statute, prisoners who are eligible under the statutory formula may be denied release if a prole panel determines that the inmate's accrued good conduct time credits do not adequately reflect his potential for rehabilitation and that he would endanger the public if released. 42.18, §§ 8(c), 8(c-1), V.A.A.C.P. (1996). The amendments to the Code of Criminal Procedure were effective September 1, 1996, and these provisions were later moved to the Government Code. V.T.C.A. Gov't Code § 508.149(b).

*Ex parte Geiken*, 28 S.W.3d at 555.

15

Tex. Gov't Code § 508.149 applies only to a prisoner serving a sentence for an offense committed on or after September 1, 1996; however, a prisoner serving a sentence for an offense committed before September 1, 1996, is covered by the law in effect when the offense was committed, "and the former law is continued in effect for that purpose."[10] *Ex parte Mabry*, 137 S.W.3d 58 (Tex. Crim. App. 2004), citing Session Law, 74th Legislature, Regular Session, Chapter 263 §§ 3 and 4 (1995).

TDCJ contends that an offender may not be released to mandatory supervision until eligible to be released on all mandatory eligible offenses. See Affidavit of Charley Valdez at 3. Applicant is currently serving two sentences, his theft conviction committed in 1994, and his injury to a child conviction committed in 2004. Neither offense would make Applicant automatically ineligible for mandatory supervision. See Tex. Code of Crim. Proc. 42.18 § 8(c)(1-13) (1994)

---

[10] These amendments constituted a saving clause. Section 3(a) provided: "The change in law made by this Act applies only to a prisoner serving a sentence for an offense committed on or after the effective date of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date."

Section 3(b) provided: "A prisoner serving a sentence for an offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose."

*Mabry*, 137 S.W.3d at 60.

After the provisions were moved to the Government Code, the savings provision was incorporated into §§ 508.147 and 508.149, and remains applicable. See Act of May 8, 1997, 75th Leg., R.S. Ch. 165, § 12.22, 1997 Tex. Gen. Laws 443.

and Tex. Gov't Code § 508.149(b). Applicant's conviction for injury to a child was not stacked on his theft conviction. See Exhibit C. Thus, the determinative factor in this case is which offense is Applicant's holding offense that determines his mandatory supervision eligibility. This Court has repeatedly stated that "[t]he statute in effect when the *holding offense* is committed determines an inmate's eligibility for release on mandatory supervision or parole." *Ex parte Thompson*, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005) (emphasis added). See also *Ex parte Hall*, 995 S.W.2d 151 (Tex. Crim. App. 1999), *Ex parte Keller*, 173 S.W.3d 492, 495 (Tex. Crim. App. 2005), *Ex parte Byrd*, 162 S.W.3d 250, 252 (Tex. Crim. App. 2005), *Ex parte Roberts*, 987 S.W.2d 575, 576 (Tex. Crim. App. 1999), and *Ex parte Rutledge*, 741 S.W.2d 460 (Tex. Crim. App. 1987) (holding that retrospective application of a statutory amendment disqualifying Rutledge's offense for an award of administrative good-conduct time credit (in order to alleviate prison overcrowding) constituted an *ex post facto* law in violation of both federal and state constitutions). "Once eligible [a person] remains eligible regardless of whether the applicable mandatory supervision law has changed in the meantime." *Ex parte Keller*, 173 S.W.3d at 495. "When an inmate has multiple convictions, he will have one conviction which governs his release date, either because it is the most recent, contains the longest sentence, or has the least amount of time credits." *Ex parte Mabry*, 137 S.W.3d at 63 (Keasler, J., concurring). The

holding conviction "is the conviction that will keep the prisoner in custody for the greatest amount of time." *Id.* Applicant's theft offense contains the longest sentence that he is still serving, and is the conviction that will keep Applicant in custody for the greatest amount of time as he is not scheduled to completely discharge that sentence until November 2, 2023. See Exhibit E-1. Applicant discharges his sentence for injury to a child on February 8, 2016. *Id.* Applicant's theft conviction is thus his holding conviction and controls which statute is applicable to his mandatory supervision eligibility. *Thompson*, 173 S.W.3d at 459.

Because Applicant's holding conviction for theft was committed prior to September 1, 1996, the former provisions of Article 42.18 § 8(c) apply, not Tex. Gov't Code § 508.149. See *Ex parte Schroeter*, 958 S.W.2d 811 (Tex. Crim. App. 1997) (incorporating Tex. Code of Crim. Proc. 42.18 § 8(c) as it existed on November 19, 1994). At the time of Applicant's conviction for theft in 1994, Art. 42.18 § 8(c) provided, in pertinent part:

> Except as otherwise provided by this subsection, a prisoner who is not on parole shall be released to mandatory supervision by order of a parole panel when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced. A person released to mandatory supervision shall, upon release, be deemed as if released on parole.
>
> \*\*\*
>
> A prisoner may not be released to mandatory supervision if the prisoner is serving a sentence for an offense and the judgment for the offense contains an affirmative finding under Subdivision (2),

18

Subsection (a), Section 3g, Article 42.12, of this code or if the person is serving a sentence for:

(1) a first degree felony under Section 19.02, Penal Code (Murder);

(2) a capital felony under Section 19.03, Penal Code (Capital Murder);

(3) a first degree felony or a second degree felony under Section 20.04 Penal Code (Aggravated Kidnapping);

(4) a second degree felony under Section 22.011, Penal Code (Sexual Assault);

(5) a second degree or first degree felony under Section 22.02, Penal Code (Aggravated Assault);

(6) a first degree felony under Section 22.021, Penal Code (Aggravated Sexual Assault);

(7) a first degree felony under Section 22.04, Penal Code (Injury to a Child or an Elderly Individual);

(8) a first degree felony under Section 28.02, Penal Code (Arson);

(9) a second degree felony under Section 29.02, Penal Code (Robbery);

(10) a first degree felony under Section 29.03, Penal Code (Aggravated Robbery);

(11) a first degree felony under Section 30.03, Penal Code (Burglary), if the offense is punished under Subsection d(2) or (d)(3) of that section; or

(12) [Blank].

(13) a felony for which the punishment is increased under Section 481.134, Health and Safety Code (Drug Free Zones)

"Under the old statute, an eligible prisoner was automatically released when the actual time served plus accrued good conduct time added up to the maximum term to which the inmate was sentenced." *Ex parte Shook*, 59 S.W.3d at 175. See also *Ex parte Geiken*, 28 S.W.3d at 555 and *Boss v. Quarterman*, 552 F.3d 425, 427 (5th Cir. 2008) ("This early-release provision is termed 'mandatory' because prior to September 1, 1996, once a prisoner's actual time served plus his accrued good-time credit equaled his prison sentence, the inmate had a nondiscretionary right to release under Texas Law 'based solely on simple arithmetic.'"), citing *Teague v. Quarterman*, 482 F.3d 769, 775 (5th Cir. 2007). Theft of Property was not one of the ineligible offense for mandatory supervision as it does not contain an affirmative funding under Subdivision (2), Subsection (a), Section 3g, Article 42.12, See Exhibit A, and it is not an offense delineated in Tex. Code of Crim. Proc. 42.18 § 8(c)(1-13) (1994).[11]

Thus, TDCJ's policy runs afoul of former Art. 42.18 § 8(c)'s plain language. "The construction of a statute by an administrative agency charged with its enforcement is entitled to great consideration when that statue is ambiguous and if the construction is reasonable and does not contradict the statute's plain language." *Ex parte Keller*, 173 S.W.3d at 497, fn. 14. See also Tex. Gov't Code § 311.023(6)

---

[11] Applicant's injury to a child conviction committed in 2004 was a 3rd degree felony as it was with intent to cause bodily injury. See Exhibit C.

and *Dodd v. Meno*, 870 S.W.2d 4 (Tex. 1994). "This Court has held that courts are required to construe a statute in accordance with the plain meaning of its literal text unless the language of the statue is ambiguous or the plain meaning leads to an absurd result." *White v. State,* 61 S.W.3d 424, 428 (Tex. Crim. App. 2001). The text of the statute is the best indicator of legislative intent. See *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) and *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). This Court looks at the "collective' intent or purpose of the legislators who enacted the legislation." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011), citing *Boykin*, 818 S.W.2d at 785. This determination begins by "first looking to the literal text" as that "provides the best means to determine 'the fair, objective meaning of that text at the time of its enactment.'" *Id.* "Words or phrases shall be read in context and construed according to the rule of grammar and common usage." Tex. Gov't Code § 311.011(a). "Moreover, 'words or phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.'" *Ex parte Keller*, 173 S.W.3d at 499 (Keller, P.J., dissenting), citing to *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim. App. 2004) and Tex. Gov't Code § 311.011(b).

Former Art. 42.18 § 8(c) specifically states, "Except as otherwise provided by this subsection, a prisoner who is not on parole shall be released to mandatory supervision by order of a parole panel when the calendar time he has served plus

21

any accrued good conduct time equal the maximum term to which he was sentenced." Tex. Code of Crim. Proc. 42.18 § 8(c) (1994). By using the word "shall," the statute "imposes a duty to some act." *Moseley v. Behringer*, 184 S.W.3d 829, 833 (Tex. App.—Fort Worth 2006, no pet.), citing to Tex. Gov't Code 311.016(2). "The ordinary meaning of 'shall' or 'must' is of a mandatory effect." *Wright v. Ector County Indep. Sch. Dist.,* 867 S.W.2d 863, 868 (Tex. App.—El Paso 1993, no writ). The duty in this instance is to release a prisoner to mandatory supervision once a certain condition has met and if there is no exception applicable. This Court, in construing the phrase "maximum term" in former Art. 42.12 § 8 (c), stated "For an inmate serving two or more concurrent sentences, we believe his maximum term must be the longest of the concurrent sentences because this is the sentence that will keep him incarcerated for the longest amount of time." *Ex parte Ruthart*, 980 S.W.2d 469, 473 (Tex. Crim. App. 1998). (Rejecting claim that mandatory supervision causes a person's first sentence to cease to operate in the context of consecutive sentences). Although, released is not specifically defined by former Article 42.18, in this context, it has been defined as "(1) To set free from confinement or restraint" and (2) "To free or unfasten; let go." *The American Heritage Dictionary* (4th ed.) at 706. See also *Clinton*, 354 S.W.3d at 800 ("When determining the fair, objective meaning of an undefined statutory term, our Court may consult standard dictionaries.").

22

The Legislative intent is clear and unambiguous, to release a person from prison once their calendar time served plus any accrued good conduct time equaled the maximum term to which he was sentenced. Applicant's "holding offense" is his pre-1996 Theft conviction. This Court determines mandatory supervision eligibility based upon "[t]he statute in effect when the holding offense [was] committed." *Ex parte Thompson*, 173 S.W.3d at 459. Because of this, we look to Applicant's theft conviction in determining his eligibility for mandatory supervision. Thus, based on the plain and unambiguous language of former Art. 42.18 § 8(c), and this Court's precedent, Applicant was entitled to release on mandatory supervision on May 12, 2013 on his theft conviction. TDCJ's policy not releasing a person to mandatory supervision until eligible to be released on all mandatory eligible offenses finds no statutory support in either former Art. 42.18 § 8(c), or this Court's precedent in determining eligibility for mandatory supervision.

TDCJ's policy also violates the federal and state constitutional prohibitions against *ex post facto* laws, the state constitutional prohibition against retroactive laws, and the statutory "savings provision." Article I, Section 10 of the United States Constitution forbids a state from passing, among other things, any *ex post facto* law; and Article I, Section 16 of the Texas Constitution proscribes the making of, among other things, an *ex post facto* law and retroactive law. In this context the Texas Constitution affords greater protection than its federal

23

counterpart because "'the former is not confined to forbidding ex post facto laws, i.e. retroactive penal legislation, but it also lays a ban on any retroactive law.'" *Ex parte Alegria*, 464 S.W.2d 868, 872 (Tex. Crim. App. 1971) (quoting the Interpretative Commentary to Article I, Section 16 of the Texas Constitution). See *Ex parte Rutledge*, 741 S.W.2d at 463 (Clinton, J., concurring) (stating that the Texas Constitutional prohibition against retroactive laws "is broader than the restrictive construction given 'ex post facto law.'"). For an *ex post facto* violation to occur, two elements must be present: (1) the law must apply to events occurring before its enactment; and (2) it must disadvantage the person affected by it. *Hughes v. State*, 897 S.W.2d 285, 298 (Tex. Crim. App. 1994) and *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (holding that the retroactive application of a good-conduct time statute to a crime committed before its enactment constituted a federal *ex post facto* violation).

As stated *supra*, Tex. Gov't Code § 508.149 applies only to a prisoner serving a sentence for an offense committed on or after September 1, 1996; however, a prisoner serving a sentence for an offense committed before September 1, 1996, is covered by the law in effect when the offense was committed, "and the former law is continued in effect for that purpose." *Ex parte Mabry*, 137 S.W.3d 58 (Tex. Crim. App. 2004). As the law existed prior to September 1, 1996, Applicant would have been automatically released (on mandatory supervision)

24

when his actual time served plus accrued good-conduct time equaled the maximum term to which he had been sentenced for the felony offense of Theft by Property. See *Ex parte Geiken*, 28 S.W.3d at 555. In this case, that date was May 13, 2013. As demonstrated by TDCJ's notices (NDMS) and BPP's votes to deny discretionary mandatory-supervision release, see Exhibit B-1, the TDCJ and BPP are treating Applicant's old sentence as eligible for only discretionary mandatory-supervision release and therefore, governed by Tex. Gov't Code § 508.149. Applicant's mandatory-supervision release date (of May 13, 2013) elapsed over two years ago, but he is still incarcerated on that old 25-year sentence. See Exhibit E-1. By applying Tex. Gov't Code § 508.149 to his old theft sentence, TDCJ and the BPP have violated the federal and state constitutional prohibition against ex post facto laws, the state constitutional prohibition against retroactive laws, and the statutory "savings provision."

Based on the foregoing, it is clear that TDCJ's policy of not releasing an inmate to mandatory supervision until he is eligible to be released on all mandatory eligible offenses is not legal as it violates this Court's prior precedent regarding eligibility for mandatory supervision, former Art. 42.18 § 8(c), federal and state constitutional prohibition against ex post facto laws, the state constitutional prohibition against retroactive laws, and the statutory "savings provision."

25

## PRAYER

Applicant Rodney Ernesto Smiley prays that this grant his Application for a Writ of Habeas Corpus and order the Texas Department of Criminal Justice and the Board of Pardons and Paroles to immediately release him on mandatory supervision from the sentence imposed in Cause No. F-9402594-PU for the felony offense of Theft of Property. Applicant also prays for such other relief that this Court may deem appropriate.

Respectfully submitted,
STATE COUNSEL FOR OFFENDERS

/s/ Nicholas Mensch
Nicholas Mensch
State Bar of Texas No. 24070262
P.O. Box 4005
Huntsville, Texas 77342-4005
(936) 437-5252
(936) 437-5279 (fax)
nicholoas.mensch@tdcj.texas.gov

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this *Applicant's Brief* was served upon opposing counsel noted below, by one or more of the following: certified mail (return receipt requested), facsimile transfer, or electronic mail (e-mail), this 25th day of June, 2015.

Andrea Jacobs
State Bar of Texas No. 24037596
Assistant Criminal District Attorney, Tarrant County
401 West Belknap
Fort Worth, TX 76196-0201
(817) 884-1687/(817) 884-1672 (fax)

Joseph P. Corcoran
State Bar of Texas No. 00793549
Assistant Attorney General
Supervising Attorney for Non-Capital Appeals
Criminal Appeals Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400/(512) 936-1280 fax


/s/ Nicholas Mensch
Nicholas Mensch
Attorney for Applicant

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Texas Rule of

Appellate Procedure 9.4(i) because this brief contains <u>5814 </u>words.


<u>/s/ Nicholas Mensch</u>
Nicholas Mensch
Attorney for Applicant
